[Sac. No. 4538. In Bank.—September 1, 1932.]

E. YOLO et al., Appellants, v. MODESTO IRRIGATION DISTRICT, Respondent.

Philip M. Carey, Marvin B. Sherwin and Joseph D. Malloy for Appellants.

L. J. Maddux for Respondent.

W. Coburn Cook, Samuel V. Cornell, David F. Bush and Hawkins & Hawkins, as *Amici Curiae*.

PRESTON, J.—Appeal from judgment of nonsuit in favor of defendant in an action to recover damages for the alleged wrongful death of plaintiffs' minor child on April 7, 1926. The boy was electrocuted on the farm where he was working while crawling through a fence, the wires of which had become charged with electricity when one of the transmission wires of defendant's power line broke during a high wind, from rubbing against the branches of a tree or

other cause, and contacted the wire strands of an adjoining fence.

The power wires, at the place where the break occurred, passed through a line of trees, the branches of which had not been trimmed for some time prior to the accident and evidence was received in support of and against the charge that the boy's death was due to the negligence of defendant in failing to properly construct and maintain the said power line and in failing to take due precautions to trim the limbs of the trees so that no injury could be caused to the wires by overhanging or swaying branches. ▮ At the conclusion of the testimony, the court granted a nonsuit upon the ground that an action in tort against defendant Irrigation District, based upon the negligence of its officers or employees, could not be maintained. Plaintiffs appealed. This question, therefore, confronts us: May an irrigation district, organized and operating as is defendant, be held liable in tort by reason of its negligent maintenance of an electric power line in connection with its irrigation system? If so, the judgment of nonsuit was improperly granted.

Preliminarily it may be said that in numerous cases dealing with tort liability, this court has distinguished between two species of public corporations. In the one class have been placed incorporated cities, towns and similar organizations, denominated "municipal corporations", which may be held liable for torts of their agents committed while acting in a proprietary capacity. (*Chafor* v. *Long Beach*, 174 Cal. 478 [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670]; *Davoust* v. *City of Alameda*, 149 Cal. 69 [9 Ann Cas. 847, 5 L. R. A. (N. S.) 536, 84 Pac. 760]; *Morrison* v. *Smith Bros.*, 211 Cal. 36 [293 Pac. 53].) In the other class have been placed irrigation, reclamation, drainage and similar organizations, variously denominated "public corporations", for "governmental purposes", "agents or representatives of the state in the particular locality in which they exist", "public agencies", etc., which (with certain exceptions such as liability created by statute) are not generally liable for torts of their agents because they are held to be state agencies performing governmental functions. (*Whiteman* v. *Anderson-Cottonwood Irr. Dist.*, 60 Cal. App. 234 [212 Pac. 706]; *Nissen* v. *Cordua Irr. Dist.*, 204 Cal. 542 [269 Pac.

171]; *Morrison* v. *Smith Bros., supra.*) The case last cited also recognizes a third classification, corporations such as a district organized under the Municipal Utility District Act (Stats. 1921, p. 245), denominated "*quasi*-municipal corporations" or public corporations of a *quasi*-municipal character, more nearly resembling municipal corporations proper than state agencies and subject, so far as liability for tort is concerned, to the rules governing municipal corporations, that is, being generally liable for torts committed by their agents while acting in a proprietary capacity. For a full discussion of this subject see *Morrison* v. *Smith Bros., supra.*

We shall now discuss the organization and operations of this defendant to determine under which classification it should come and whether it is subject to the general rule governing tort liability or to the exception thereto which excludes state agencies.

Defendant, the Modesto Irrigation District, was created by legislative enactment (Stats. 1877–78, p. 820) and operating under this legislation as an irrigation district, it was within the classification of a public or state agency performing a governmental function, exempt from liability for the torts of its agents. However, defendant subsequently availed itself of the provisions of the statute of 1919 and subsequent amendments (Stats. 1919, p. 778; Stats. 1921, pp. 829, 1083; Stats. 1923, p. 629), pursuant to which it constructed power-houses and transmission lines for the manufacture, distribution and sale of electric power, light and energy throughout its territory and also outside of its boundary lines, competing with a public service corporation and, in fact, using only about twenty-five per cent of the power generated and transmitted by it for pumping, drainage and other necessary irrigation district activities. Appellants contend that by so engaging in these latter activities, defendant stepped beyond the character and out of the classification of purely an irrigation district or state agency and assumed in part at least the role of a municipal or *quasi*-municipal corporation. In other words, appellants claim that, although cloaked with the name and form of an irrigation district, defendant, so far as its operations under said statute are concerned, more closely resembles a municipal corporation proper than it does a state agency and it may properly be termed an organization coming within the

classification of a *quasi*-municipal corporation, liable for the torts of its agents when acting in a proprietary capacity. These contentions must be sustained.

This is so because of the language of the act itself, which in so many words extends the scope of the organization beyond that of an irrigation district, enlarges its powers. For instance, the act states that any irrigation district "may provide for the construction, acquisition, operation, leasing and control of plants for the generation, distribution, sale and lease of electrical energy, including sale to municipalities, corporations, public utility districts, or individuals, of electrical power so generated"; that "the officers, agents and employees of such districts shall have the same powers, duties and liabilities respecting such power and the construction, acquisition, repair, maintenance, management and control thereof as they now have or may hereafter have respecting such irrigation or such irrigation districts"; that "the California Irrigation District Act shall be so construed, applied and enforced to apply to such power as well as such irrigation, *except that nothing in said act shall be so construed as to prevent the sale of power by any district for use outside of the boundaries of the district* or to require the distribution of such power in accordance with any assessments levied by such district". In particular the exception noted in the clause last quoted has the undeniable effect of extending the powers of the corporation beyond those authorized by the Irrigation Act and requiring it to assume characteristics more nearly partaking of the nature of a municipal corporation than of a state agency.

The maintenance and operation of an electric plant used to supply the public with power has been directly held to be the exercise, not of a governmental function, but of a proprietary and private right. (*Davoust* v. *City of Alameda, supra.*) It is immaterial in this case what particular use was being made at the time in question of the power conveyed over the broken wire—whether it was carrying power for irrigation purposes or for sale or for other purposes—so long as said wire was constructed and maintained as a part of and for the advancement of the proprietary enterprise. The said act, pursuant to which defendant was operating, is determinative of its nature as a *quasi*-municipal corporation and it follows that it may be held liable, when

acting in a proprietary capacity, for the torts of its agents. In other words, while we can conceive that a governmental agency might be organized and authorized to operate a power plant for governmental purposes only and thus be free from tort liability, this could not be true of a corporation organized pursuant to the above statute, which specifically opens the door to the conducting of a proprietary enterprise by authorizing the sale of power outside of the boundaries of a district—such corporation, therefore, being free to act in a proprietary capacity, must be held liable for torts committed by its agents in conducting the proprietary enterprise. Recognizing this fact, the complaint here specifically alleges that said defendant was on said day and now is "engaged in a purely proprietary enterprise additional to and not necessary for irrigation purposes, to-wit: in the business of transmitting, transporting, distributing and selling electric current and power to consumers thereof in and near the City of Modesto. . . . "

The above holding is foreshadowed in some of the cases upon which defendant mainly relies. For example, in the case of *Whiteman* v. *Anderson-Cottonwood Irr. Dist., supra* (60 Cal. App. 234, 241, 242 [212 Pac. 706, 709]), the court says: "It is manifest that to uphold the complaint herein as stating a cause of action against the corporation we must take the position that the district is concerned in its operations only with private matters. This follows for the reason that the complaint does not specify for what purpose the cement was to be used. If it could be legally devoted by the district to any public purpose, it would be necessary to negative that condition by alleging facts showing that the district was promoting a proprietary right in the use of the cement at the time of the accident. There is no such allegation."

This distinction is also noted in the case of *Nissen* v. *Cordua Irr. Dist., supra* (204 Cal. 545 [269 Pac. 171]). Again, in *Morrison* v. *Smith Bros., supra* (211 Cal., at p. 45 [293 Pac. 53, 56]), it is said: "The rule excluding state agencies from liability for tort is an exception to the general rule which we are not inclined to extend."

The justice of this ruling is apparent. As stated by counsel, a practical situation is presented. The inhabitants of Modesto and outlying districts desired to operate an

electrical distribution system under public ownership. Had this end been accomplished through the city itself, a municipal corporation, it would have been liable for all torts committed by it in conducting such a proprietary enterprise (*Davoust* v. *City of Alameda, supra; Ruppe* v. *City of Los Angeles,* 186 Cal. 400 [199 Pac. 496]; *Sincerney* v. *City of Los Angeles,* 53 Cal. App. 440 [200 Pac. 380]); had it been accomplished through a public utility district, such district might also have been liable (*In re Orosi Public Utility District,* 196 Cal. 43 [235 Pac. 1004]); the same is true of a municipal utility district (*Morrison* v. *Smith Bros., supra*). What real reason, then, could there be for making a distinction in favor of an organization operating under the said act of 1919, as amended? None exists; hence our conclusion that such a corporation, when acting in its proprietary capacity, may be held liable for the torts of its agents.

The judgment is reversed.

Curtis, J., Tyler, J., *pro tem.,* Seawell, J., and Waste, C. J., concurred.

Rehearing denied.