**In re LINDSAY–STRATHMORE IRR. DIST.***

No. 4575.

District Court, S. D. California, N. D.

Nov. 13, 1937.

*Motion to dismiss or affirm denied 58 S.Ct. 649, 82 L.Ed. ——.

130

Mitchell, Silberberg, Roth & Knupp, of Los Angeles, Cal., and James R. McBride, of Yuba City, Cal., for petitioner.

W. Coburn Cook, of Turlock, Cal., for respondents.

Ben Harrison, U. S. Atty., of Los Angeles, Cal., and Henry A. Julicher, Atty., Department of Justice, of Washington, D. C., for the United States.

YANKWICH, District Judge.

Lindsay-Strathmore Irrigation District, which we shall call "the district," is an irrigation district, organized under the "California Irrigation District Act," approved March 31, 1897 (St.Cal.1897, p. 254), and the acts amending and supplementing it. It comprises approximately 15,260 acres of land located in Tulare county, Cal., and is organized for the purpose of constructing, improving, maintaining, and operating improvement projects and works devoted chiefly to the improvement of lands within its boundaries for agricultural purposes. Alleging that it is a taxing agency and instrumentality within the meaning of chapter 10 of the Bankruptcy Act, approved August 16, 1937 (sections 81–84 [11 U.S.C.A. §§ 401–404]), it filed on September 21, 1937, a "petition for confirmation of a plan for composition or re-adjustment of its debt." The insolvency arises by reason of its inability to meet its obligations as to two bond issues issued by it under the provisions of the California Irrigation District Act. Attached to the petition is a plan of composition and readjustment, accepted by the petitioner and creditors owning approximately 87 per cent. in amount of the securities affected by the plan, who have consented to the filing of the petition. It is aimed to pay in cash to the holders of the bonds a sum equal to 59.978 cents for each dollar of the principal amount of each bond, in full payment, discharge, and satisfaction of all amounts of principal and interest due on such bond. The payment is to be made out of a loan which the Reconstruction Finance Corporation has author-

ized and agreed to make to the district. Upon the filing of the petition, I entered an order approving it as properly filed under chapter 10, and set December 3, 1937, as the time and place for the hearing on it. On September 30, 1937, Milo W. Bekins and Reed J. Bekins, as trustees appointed by the will of Martin Bekins, deceased, and of the will of Katherine Bekins, deceased, J. R. Mason, James Irvine, A. Heber Winder, trustee for Eva A. Parrington, trust, and C. A. Moss gave notice of motion to dismiss the petition, upon the ground, among others, that the court was without jurisdiction of the subject matter of the proceeding and that chapter 10 of the Bankruptcy Act—sections 81 to 84, inclusive—is unconstitutional and void. The matter coming up for hearing on October 11, 1937, I certified to the Attorney General the fact that the constitutionality of the act was drawn in question, under the provisions of the judiciary reform act approved August 24, 1937 (Public No. 352, 75th Congress, chapter 754, § 1 [28 U.S.C. A. § 401]), and allowed the government to intervene and defend the act's constitutionality.

Chapter 10, sections 81 to 84, of the Bankruptcy Act (11 U.S.C.A. §§ 401–404), under which the petition was filed, were intended to supplant section 80 of the act (as amended [11 U.S.C.A. § 303]), which was stricken down by the decision of the Supreme Court in Ashton v. Cameron County Water District (1936) 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309.

The presumption in favor of constitutionality calls for a ruling in favor of the validity of an act of the Congress and commands us to resolve all doubts in favor of validity unless the contrary is made to appear beyond a reasonable doubt. In effect, this means that we must sustain the new act unless the decision in Ashton v. Cameron County District, supra, compels a different conclusion. This is especially true when we consider an act passed to replace one invalidated by our highest court. See Wright v. Vinton Branch of Mountain Trust Bank (1937) 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736. It is not necessary to enter into a detailed comparison of the two acts. While the aim of the old act was "re-adjustment" of debts of insolvent public agencies named in it, the new act aims at "composition" of the debts of the agencies coming under it, insolvency existing. Both plans contemplate a volun-

tary petition containing a plan approved by a certain number of its creditors—30 to 51 per cent. in the old act, 51 per cent. in the new act—the preliminary approval by the court of the petition, due notice of hearing for final confirmation of the plan of reorganization by the court, if approved by more than a majority of the creditors, the percentage varying in the old act from 51 upward and being fixed at two-thirds in all cases in the new act. The confirmation of the plan in both instances and the payment of the consideration, under both enactments, has the effect of discharging the debtor from all debts or liabilities covered by the plan. The new act disowns, as did the old one, any intention to interfere with the exercise of state governmental authority. Subdivision (i) of section 83 (11 U.S.C.A. § 403(i), reads:

"(i) Nothing contained in this chapter shall be construed to limit or impair the power of any State to control, by legislation or otherwise, any municipality or any political subdivision of or in such State in the exercise of its political or governmental powers, including expenditures therefor."

The agencies to which the old act applied included: "(a) Any municipality or other political subdivision of any State, including (but not hereby limiting the generality of the foregoing) any county, city, borough, village, parish, town, or township, unincorporated tax or special assessment district, and any school, drainage, *irrigation,* reclamation, levee, sewer, or paving, sanitary, port, improvement, or other districts (hereinafter referred to as a 'taxing district')" Bankruptcy Act, § 80(a) as amended, 11 U.S.C.A. § 303(a).

The new statute is made to apply to "(1) Drainage, drainage and levee, levee, levee and drainage, reclamation, water, *irrigation,* or other similar districts, commonly designated as agricultural improvement districts or local improvement districts, organized or created for the purpose of constructing, improving, maintaining, and operating certain improvements or projects devoted chiefly to the improvement of lands therein for agricultural purposes; or (2) local improvement districts such as sewer, paving, sanitary, or other similar districts, organized or created for the purposes designated by their respective names; or (3) local improvement districts such as road, highway, or other similar districts, organized or created for the purpose of grad-

ing, paving, or otherwise improving public streets, roads, or highways; or (4) public-school districts or public-school authorities organized or created for the purpose of constructing, maintaining, and operating public schools or public-school facilities; or (5) local improvement districts such as port, navigation, or other similar districts, organized or created for the purpose of constructing, improving, maintaining, and operating ports and port facilities; or (6) any city, town, village, borough, township, or other municipality." Bankruptcy Act, chapter 10, § 81. (11 U.S.C.A. § 401).

The scope of both acts is limited as to time—the old act expiring on January 1, 1940 (section 79 as amended [11 U.S.C.A. § 302]), the new act on June 30, 1940 (section 84 [11 U.S.C.A. § 404). In the Report of the Committee on the Judiciary of the House of Representatives, on the act, its aim is stated:

"The Committee on the Judiciary is not unmindful of the sweeping character of the holding of the Supreme Court above referred to, and believes that H.R. 5969 is not invalid or contrary to the reasoning of the majority opinion in the 5-to-4 decision. The act which was declared unconstitutional designated the instrumentalities included in its provisions as political subdivisions of the State, and the Supreme Court determined that it was beyond the power reposed in Congress by article 1, section 8, clause 4, of the Federal Constitution, 'To establish * * * uniform Laws on the subject of bankruptcies,' to pass an act to interfere with the States in the control of their fiscal affairs.

"The bill here recommended for passage expressly avoids any restriction on the powers of the States or their arms of government in the exercise of their sovereign rights and duties. No interference with the fiscal or governmental affairs of a political subdivision is permitted. The taxing agency itself is the only instrumentality which can seek the benefits of the proposed legislation. No involuntary proceedings are allowable and no control or jurisdiction over that property and those revenues of the petitioning agency necessary for essential governmental purposes is conferred by the bill.

"As the statute which was declared unconstitutional was held to be within the subject of bankruptcies and uniform in its application, a fortiori, the present bill is adequately related to the general subject of

bankruptcies, and does not conflict with the Fifth Amendment of the Federal Constitution as to due process of law." Report No. 517, 75th Congress, First Session.

It is evident that the committee assumed that the old statute had been declared unconstitutional merely because the Congress had used the generic phrase "any municipality or other political subdivision of any State." The new act seeks to overcome this infirmity by enumerating specifically certain tax instrumentalities without grouping them under a generic title.

But the old act included specifically *irrigation districts, as does the new.* And the new act includes specifically *municipalities,* as did the old.

■ The new act attempts to draw a distinction between taxing bodies which are true governmental subdivisions—such as counties, cities, villages, boroughs—and those which are governmental agencies of limited scope or between what are strictly municipal corporations and public or quasi municipal corporations, of more limited scope. The distinction is made often in public law, especially in dealing with the power to tax and liability for tort, between strictly governmental and proprietary functions. See Helvering v. Powers (1934) 293 U.S. 214, 55 S.Ct. 171, 79 L.Ed. 291; Ohio v. Helvering (1934) 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307; Brush v. Commissioner (1937) 300 U.S. 352, 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428; Yolo v. Modesto Irrigation District (1932) 216 Cal. 274, 13 P. (2d) 908.

■ But a governmental body does not lose its character as such merely because it may engage in activities of a proprietary nature. If it is an agency of the state for the performance of certain functions, the fact that the functions are limited does not alter its status. An agency of the state for the performance of governmental functions it still remains. Ultimately, the test is, Does it have the attributes of sovereignty? Do its activities constitute a public as distinguished from a private enterprise? In carrying out its functions, does it exercise that great prerogative which belongs to sovereignty only—the power to tax and assess property within its boundaries for the upkeep of its activities? If it does, then it is a state agency or instrumentality, although it does not fit into any of the old rubrics under which governmental agencies were classified in less complex days—villages, towns, cities, boroughs, and the like.

As I read the decision in Ashton v. Cameron County District, supra, it is grounded upon this proposition.

The gist of the majority opinion is contained in the statement: "Like any sovereignty, a state may voluntarily consent to be sued; may permit actions against her political subdivisions to enforce their obligations. Such proceedings against these subdivisions have often been entertained in federal courts. But *nothing in this tends to support the view that the federal government, acting under the bankruptcy clause, may impose its will and impair state powers—pass laws inconsistent with the idea of sovereignty.*" Ashton v. Cameron, etc., District, 298 U.S. 513, 531, 56 S.Ct. 892, 896, 80 L.Ed. 1309. (Italics added.)

A dissenting opinion often helps clarify the import and meaning of the majority opinion.

The minority opinion does not seek to draw any distinction between public or quasi municipal bodies and true state subdivisions. As the court *was not dealing with a municipality, but with a water and irrigation district,* it is quite certain that the minority represented by the Chief Justice, Mr. Justice Brandeis, Mr. Justice Stone, and Mr. Justice Cardozo, who wrote the opinion, would have based their dissent upon the proposition, that, granted the principles of the majority opinion, the water district, because of its limited powers, was not a political subdivision of the state. They did not do this. Instead, they asserted boldly that, while immunity from federal bankruptcy acts would attach to the state, it should not attach to local governmental units. Mr. Justice Cardozo says:

"There is room at least for argument that within the meaning of the Constitution the bankruptcy concept does not embrace the states themselves. In the public law of the United States a state is a sovereign or at least a quasi sovereign. Not so a *local governmental unit, though the state may have invested it with governmental power.* Such a governmental unit may be brought into court against its will without violating the Eleventh Amendment. Lincoln County v. Luning, 133 U.S. 529, 10 S. Ct. 363, 33 L.Ed. 766; Hopkins v. Clemson College, 221 U.S. 636, 645, 31 S.Ct. 654, 55 L.Ed. 890, 35 L.R.A.(N.S.) 243. It may be subjected to mandamus or to equitable remedies. See, e. g. Norris v. Montezuma Valley Irrigation District (C.C.A.) 248 F. 369, 372; Tyler County v. Town (C.C.A.)

23 F.(2d) 371, 373. *'Neither public corporations nor political subdivisions are clothed with that immunity from suit which belongs to the state alone by virtue of its sovereignty.'* Hopkins v. Clemson College, supra." Ashton v. Cameron County, etc., Dist., supra, 298 U.S. 513, at page 542, 56 S.Ct. 892, 901, 80 L.Ed. 1309. (Italics added.)

It is evident to me that the decision was not grounded upon the fact that the power of the Texas Legislature to establish water districts was derived from the general constitutional provision permitting the creation of political subdivisions of the state with power to sue and be sued, issue bonds, levy and collect taxes. The majority opinion intended to apply the limitation to *all* "taxing agencies" which exercise, under the authority of the state, the attributes of sovereignty. That this is the import of the decision is also shown by what the court says about it in Brush v. Commissioner, 300 U.S. 352, 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428.

There the court was considering the immunity of state governmental agencies from federal taxation. It held that a municipality in supplying water to its inhabitants engaged in a governmental function which brought immunity from federal income tax to an engineer employed in its Water Department. Speaking of the scope of Ashton v. Cameron County District, supra, the court said:

"We recently have held that the bankruptcy statutes could not be extended to municipalities or other political subdivisions of a state. Ashton v. Cameron County Water District, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309. *The respondent there was a water-improvement district organized by law to furnish water for irrigation and domestic uses.* We said (298 U.S. 513, at pages 527, 528, 56 S.Ct. 892, 80 L.Ed. 1309) that respondent was a political subdivision of the state 'created for the local exercise of her sovereign powers. * * * Its fiscal affairs are those of the state, not subject to control or interference by the national government, unless the right so to do is definitely accorded by the Federal Constitution.' In support of that holding, former decisions of this court with respect to the immunity of states and municipalities from federal taxation were relied upon as apposite. *The question whether the district exercised governmental or merely corporate functions was distinctly in issue.* The petition in bankruptcy alleged that the district was created with power to perform 'the proprietary and/or corporate function of furnishing water for irrigation and domestic uses.' The district judge * * * held that the district was created for the local exercise of state sovereign powers; that it was exercising 'a governmental function'; that its property was public property; that it was not carrying on private business, but public business. That court, having denied the petition for want of jurisdiction, the district submitted a motion for a new trial in which it assigned, among other things, that the court erred in holding that petitioner was created for the purpose of performing functions, 'for the reason that the Courts of Texas, as well as the other Courts in the Nation, *have uniformly held that the furnishing of water for irrigation was purely a proprietary function.*' *Substantially the same thing was repeated in other assignments of error.* In the petition for rehearing in this court, * * * the district challenged our determination that respondent was a political subdivision of the state 'created for the local exercise of her sovereign powers,' and asserted to the contrary that the facts would demonstrate that *'respondent is a corporation organized for essentially proprietary purposes.' It is not open to dispute that the statements quoted from our opinion in the Ashton Case were made after due consideration, and the case itself decided and the rehearing denied in the light of the issue thus definitely presented.* Compare Bingham v. United States, 296 U.S. 211, 218, 219, 56 S.Ct. 180, 80 L.Ed. 160." Brush v. Commissioner, 300 U.S. 352, 368, 369, 57 S.Ct. 495, 499, 81 L.Ed. 691, 108 A.L.R. 1428. (Italics added.)

And see Southern Sierras Power Company v. Imperial Irrigation District (C.C. A.1937) 87 F.(2d) 355.

It is clear that the court did not draw any line between governmental functions exercised by municipal corporations and similar functions exercised by public or quasi municipal corporations of more limited scope. The distinction it drew was between *governmental and corporate functions.* Corporate functions are functions which may be exercised by any private corporate body. They do not partake of a public nature.

■ Public functions, performed by an agency created by the state, the officers of which are elected by voters having the qualifications of general electors of the state, and

which exercises the powers of eminent domain and taxation—the latter two among the two most important attributes of sovereignty and without which there could be no true sovereignty—are clearly governmental.

The functions of the irrigation district seeking relief under this enactment, are of this character. The district is one of the instrumentalities of the state, which fall under the interdict of Ashton v. Cameron etc., Dist., supra. Since the enactment in 1887 (St.Cal.1887, p. 29), of the first Irrigation District Act in California, commonly known as the "Wright Act," California courts have had many occasions to determine the character of the districts created under it. So has the Supreme Court of the United States in upholding the act. A California irrigation district, while not a political subdivision of the state, is a public corporation for municipal purposes and its officers are public officers of the state. See Fallbrook Irrigation District v. Bradley (1896) 164 U. S. 112, 17 S.Ct. 56, 41 L.Ed. 369; In re Madera Irr. Dist. (1891) 92 Cal. 296, 28 P. 272, 675, 14 L.R.A. 755, 27 Am.St.Rep. 106; Lindsay-Strathmore Irr. Dist. v. Superior Court (1920) 182 Cal. 315, 187 P. 1056; Turlock Irr. Dist. v. White (1921) 186 Cal. 183, 198 P. 1060, 17 A.L.R. 72; Crawford v. Imperial Irr. Dist. (1927) 200 Cal. 318, 253 P. 726; Wood v. Imperial Irr. Dist. (1932) 216 Cal. 748, 17 P.(2d) 128; Yolo v. Modesto Irr. Dist. (1932) 216 Cal. 274, 13 P.(2d) 908, 909. The case last cited contains one of the latest declarations of the Supreme Court of California on the subject. An irrigation district is there denominated *"a quasi municipal corporation."* In Morrison v. Smith Brothers, Inc. (1930) 211 Cal. 36, 40, 293 P. 53, 54, irrigation districts are called *"state agencies, performing a governmental function."* In Sutro Heights Land Co. v. Merced Irr. Dist. (1931) 211 Cal. 670, 690, 296 P. 1088, 1096, 1098, an irrigation district is referred to as *"an agency of the state, and the use to which water owned and controlled by it is put is a public use."* The same court, in order to give to irrigation districts immunity from liability for torts, considers them *state agencies.* See Whiteman v. Anderson-Cottonwood Irrigation District (1922) 60 Cal.App. 234, 212 P. 706; Nissen v. Cordua Irr. Dist. (1928) 204 Cal. 542, 545, 269 P. 171; Morrison v. Smith Bros. (1930) 211 Cal. 36, 293 P. 53; Yolo v. Modesto Irr. Dist., supra. And on the general nature of instrumentalities of this character, as *state agencies performing functions of government,* see Houck v. Little River Drainage District (1915) 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266.

Irrigation in California is "a public use," and the power of eminent domain may be exercised in behalf of it. Constitution of California, art. 1, § 14; California Code of Civil Procedure, § 1241, as amended by St.Cal.1935, p. 939; Stats.1911, p. 1407.

The manner in which irrigation districts are created, the fact that they are called into being by an act of the supervisors of the county in which the major part of the lands are located, upon petition of the property owners, that the officers of the district are elected by a vote not of property owners, but of *all electors* within the district, the fact that the officers are subject to recall, as are all other officers of the state, the fact that, before bonds are issued by the Board of Directors of an irrigation district for the purpose of constructing or acquiring works or other property, the plans for such works and the amount of the bonds to be issued must be approved by the California Districts Securities Commission, consisting of the State Attorney General, the State Engineer, the Superintendent of Banks and two other members appointed by the Governor of the state, who must report on the feasibility of the project—these, and other facts, serve to show the character of an irrigation district as a public instrumentality and agency of the state, subservient to it. Stats.1897, p. 254; Stats.1931, p. 2263.

Within their limited scope, irrigation districts exercise the powers of sovereignty. Like sovereigns, they enjoy immunity from liability for torts. They owe their existence to the state, and exercise state functions within their area, just as effectively as municipalities. Clearly, they are of the same type as the water and irrigation company which was before the Supreme Court in Ashton v. Cameron County Water District, supra, and of which the court said: "that the right to borrow money is essential to its operations. Houck v. Little River Drainage District, 239 U.S. 254, 261-263, 36 S.Ct. 58, 60 L.Ed. 266; Perry v. United States, 294 U.S. 330, 331, 55 S.Ct. 432, 79 L.Ed. 912, 95 A.L.R. 1335. Its fiscal affairs are those of the state, not subject to control or interference by the national government, unless the right so to do is definitely accorded by the Federal Con-

stitution." Ashton v. Cameron, etc., Dist., supra, 298 U.S. 513, at page 528, 56 S.Ct. 892, 895, 80 L.Ed. 1309.

I feel compelled by this decision to hold that the new enactment, chapter 10, of the Bankruptcy Act, in so far as it applies to irrigation districts of the type of the petitioner, is constitutionally vulnerable, as was the old.

As a student, exercising private judgment, I agree with the conclusion of the dissenters that immunity from interference through federal bankruptcy laws, even if applicable to states, should not be extended to state instrumentalities, whether they be municipal, quasi municipal, or public corporations. However, as a judge of a lower court, I cannot exercise private judgment, but must follow the opinion of the majority, which, as I read it, extends the immunity to *all* governmental agencies created by a state for the performance of public functions.

The motion to dismiss will be granted.

Exception to the debtor and the intervener.