[Civ. No. 6007. Third Appellate District.—December 26, 1939.]

EVERETT ELDEN CALKINS, Appellant, v. ALBERT H. NEWTON et al., Defendants; COUNTY OF SISKIYOU (a Body Politic), Respondent.

Carter, Barrett, Finley & Carlton for Appellant.

James Davis, District Attorney, and Tebbe & Correia for Respondent.

DEIRUP, J., *pro tem.*—This action was instituted by appellant against certain physicians and nurses and also against the County of Siskiyou to recover damages alleged to have been received by him by reason of negligence on the part of the doctors and nurses. It is alleged in the amended complaint that the respondent County of Siskiyou has built and maintains a general hospital in the city of Yreka; that there is no other general hospital in that vicinity; and that the majority of the patients who enter the hospital are pay patients and that the hospital is operated at a profit. Appellant, upon the advice of his physicians, went to the hospital for the treatment of a minor injury to his leg. In the course

of the treatment his leg was placed in a bake oven which was used to apply artificial heat and was left in it so long that it was severely burned and had to be amputated. This injury was due to the negligence of appellant's doctors and also to that of the nurses, who were county employees in the hospital. The respondent county demurred to the amended complaint. Its demurrer was sustained without leave to amend, and the allegations that we have referred to must therefore be taken as being true. The appeal is from the judgment which was entered upon the sustaining of the demurrer.

The question involved upon this appeal is, as stated by appellant:

*"Is a County liable for an injury caused by the negligence of its employees in a hospital operated by the County at a profit, where such County Hospital furnishes the only hospital facilities available in the community and the injured person was a paying patient."*

█ In another form, the question is whether the county acts in a governmental capacity or in a proprietary capacity when it conducts such a hospital under such circumstances, for it is axiomatic that neither the state nor any governmental agency of the state is liable for the negligence of its agents or employees who are engaged in the performance of governmental functions unless such liability is imposed by statute, which is not the case here, or whether the liability has the effect of taking property for a public use without compensation.

Sections 200–204 of the Welfare and Institutions Code authorize the board of supervisors of each county to provide for the care and maintenance of the indigent sick and dependent poor of the county; to appoint a physician; to furnish hospitalization and medical care and treatment at cost in private hospitals and to "establish and maintain a county hospital, prescribe rules for the government and management thereof, and appoint a county physician and other necessary officers and employees thereof, who shall hold office during the pleasure of the board"; and further provide that any expectant mother who is unable to pay for her necessary care must be admitted to such hospital, the cost of such service being a charge against the county of her residence. The pur-

pose of this statute obviously is to empower the board of supervisors to provide for the care of the inhabitants of the county who are actually in need of such care. Authority to build and operate a hospital for profit is not given expressly nor by implication.

Although nothing is said in the statute about making any charge for hospital services, other than that the county in which an expectant mother resides must pay the cost of her hospitalization, it is the practice in many counties to accept pay patients in their general hospitals. The legality of this practice is fully discussed in the case of *Goodall* v. *Brite,* 11 Cal. App. (2d) 540 [54 Pac. (2d) 510]. From this decision it appears that, although there were enough private hospitals in Kern County to care for all persons in need of hospitalization who could pay for the service, the county had permitted such persons to enter the county general hospital for treatment at rates that were lower than those charged by private hospitals and less than the actual cost to the county. Action was brought by citizens and taxpayers of the county to enjoin this practice. It was held on appeal ''that the admission and treatment of patients in the county hospital who, either themselves or through legally responsible relatives, can provide themselves with equally efficient care and treatment in private institutions does not promote the health and general welfare of the citizens of Kern county and is not a proper exercise of the police power of that county and results in the use of public money for private purposes''.

On the other hand, it was held further that it was proper for the county to admit to the hospital emergency cases and also persons who could pay a part of the cost of hospitalization, but, upon investigation, were found to be financially unable to meet the charges made by a private institution, and to collect from them as much as they were able to pay, not exceeding the actual cost to the county, for such persons are indigent in a relative sense. Their lives may depend upon proper hospitalization but they cannot get it because of their limited financial resources. By furnishing it to them at cost, or at less than cost if necessary, the county promotes the health and welfare of its citizens.

We find a different situation in Siskiyou County, as alleged in the amended complaint. There are no private gen-

eral hospitals in the vicinity of the county general hospital at Yreka. Citizens who need hospitalization may be unable to get it without what might be fatal inconvenience and delay if they are not admitted to the county general hospital, even though they are able to pay full rates. Under such circumstances it is proper for the county to furnish the service to such persons, in so far as its facilities permit, because they are in the same situation as the indigent sick in that they cannot obtain the care they need regardless of their ability to pay for it. But they should be compelled to pay as much of the actual cost of hospitalization as they can. The admission of such patients into the county hospital under such circumstances and upon such terms clearly promotes the health and general welfare of the citizens of the county and is therefore within the police powers of the board of supervisors. Such powers, so exercised, are governmental in their character.

Counsel for appellant, contend however, that Siskiyou County has abandoned its governmental function and entered the field of private business by imposing such charges that it makes a profit and should therefore be held liable for negligence to the same extent as a private institution or a municipality which is engaged in a proprietary venture. They rely chiefly upon the case of *Henderson* v. *Twin Falls County*, 56 Idaho, 124 [50 Pac. (2d) 597, 101 A. L. R. 1151]. The facts in that case are very much like those in this case, although the matter of profit is not mentioned in the decision. It was held that the county was liable for injuries received by a pay patient through the negligence of employees of a county general hospital. But the statute which authorized the maintaining of a county hospital was different from the corresponding statute of this state in that it provided specifically that: ''Such hospital may suitably provide for, and accept other patients in so far as their facilities will permit and may charge and accept payment from such of their patients as are able to make payments for services rendered and care given.''

Having concluded that the statute authorized the county to engage in the hospital business as a proprietary activity, the Supreme Court of Idaho held further that the rule that the sovereign is not liable for torts is not applicable to such

a venture and that, therefore, the county may be liable for the negligence of its servants. This and other recent decisions hold that the rule of sovereign nonliability, as such, should be abandoned and that a county should be held to the same degree of liability for tort as a municipality in the exercise of a function that is not governmental, but proprietary. (*Bell* v. *City of Pittsburgh,* 297 Pa. 185 [146 Atl. 567, 64 A. L. R. 1542] ; *Willcox* v. *Erie County,* 252 App. Div. 20 [297 N. Y. Supp. 287] ; *Smith* v. *Westchester County,* 253 App. Div. 725 [300 N. Y. Supp. 201].) In this state an irrigation district, as a governmental agency, is free from liability for the negligence of its agents and employees in the delivery of water to the inhabitants of the district. (*Whiteman* v. *Anderson Cottonwood Irr. Dist.,* 60 Cal. App. 234 [212 Pac. 706] ; *Jackson & Perkins Co.* v. *Byron-Bethany Irr. Dist.,* 136 Cal. App. 375 [29 Pac. (2d) 217, 30 Pac. (2d) 516] ; *Morrison* v. *Smith Bros., Inc.,* 211 Cal. 36 [293 Pac. 53].) But when, under authority of statute, it sells electric current to the general public in competition with private utilities it becomes liable for negligence in the exercise of that function. (*Yolo* v. *Modesto Irr. Dist.,* 216 Cal. 274 [13 Pac. (2d) 908].)

In view of these decisions we are not inclined to hold that liability for negligence might not exist as against a county if the legislature empowered it to engage in the hospital business, or in any other business of a proprietary nature. But we do not find such authority in the laws which relate to county hospitals in this state. Here, the operation of the hospital is governmental. Or if we regard it as being charitable in its nature, the county is entitled to the same exemption from liability as is allowed private hospitals which receive pay patients but are not operated for profit. (*Hallinan* v. *Prindle,* 17 Cal. App. (2d) 656 [62 Pac. (2d) 1075] ; *Armstrong* v. *Wallace,* 8 Cal. App. (2d) 429 [47 Pac. (2d) 740].)

The imposition of a charge for service is not inconsistent with the exercise of a governmental function. (*Kellar* v. *City of Los Angeles,* 179 Cal. 605 [178 Pac. 505] ; *Manning* v. *City of Pasadena,* 58 Cal. App. 666 [209 Pac. 253] ; *Dillwood* v. *Riecks,* 42 Cal. App. 602 [184 Pac. 35].) Nor is the fact that the county general hospital was operated at a profit controlling. ■ A county is authorized only to furnish

hospitalization to those persons within the county who cannot secure it elsewhere. The county can charge only the cost of the service. The board of supervisors has not the power, merely by disregarding the limitations in the law, to admit patients who are not entitled to the service or to charge the persons who should have the service an excessive fee. A governmental agency does not incur liability for negligence by doing an act which is *ultra vires*. (*City of Dallas* v. *Smith*, 130 Tex. 225 [107 S. W. (2d) 872] ; *Tollefson* v. *City of Ottawa*, 228 Ill. 134 [81 N. E. 823, 11 L. R. A. (N. S.) 990] ; *Lund* v. *Salt Lake County*, 58 Utah, 546 [200 Pac. 510].) If the board of supervisors has exceeded its authority in any respect the remedy is not to impose liability for negligence, but to bring a proper proceeding against it.

We can see no difference in principle between the situation involved in this case and the one dealt with in the case of *Davie* v. *Board of Regents*, 66 Cal. App. 693 [227 Pac. 243]. There a governmental agency—the University of California—made a charge against each student for hospital and medical services, surgical operations being performed at cost. In an action of the same nature as the one now before us it was held that the university was acting within the scope of its governmental functions in maintaining the infirmary and in making the charges against the students and, therefore, was not liable for the negligence of its servants. And in that case, just as here, it was alleged in the complaint and admitted by the demurrer that the university derived a profit from the operation of the infirmary.

The judgment is affirmed.

Tuttle, J., and Thompson, Acting P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 19, 1940.