[L. A. No. 22537. In Bank. May 15, 1953.]

NAOMI S. TALLEY et al., Appellants, v. NORTHERN SAN DIEGO COUNTY HOSPITAL DISTRICT (a Corporation), Respondent.

David S. Casey for Appellants.

Belli, Ashe & Pinney and Renetzky & Davis, as Amici Curiae on behalf of Appellants.

Gray, Cary, Ames & Frye and Ward W. Waddell, Jr., for Respondent.

SHENK, J.—This is an appeal from a judgment for the defendant in an action to recover damages for personal injuries alleged to have resulted from the negligence of the defendant's agents in caring for the plaintiff while she was a patient at the defendant's hospital. Judgment was entered upon the sustaining of a demurrer on the ground that the amended complaint failed to state a cause of action. The court took judicial notice of the fact that the defendant is a local hospital district, organized under section 32000 et seq. of the Health and Safety Code, and applied the rule that a hospital performing a governmental function is not liable for personal injuries suffered by patients as a result of the negligence of its employees.

The amended complaint alleges that the plaintiff was admitted to the defendant's hospital for the purpose of delivering her of a child; that while she was in a state of unconsciousness brought about by the use of an anaesthetic the defendant and its agents allowed her body and legs to become burned by the negligent use of hot water bottles; that as a result she suffered serious and permanent injuries; that the defendant's hospital was "open to the public as a hospital where a person, for a money consideration, could obtain hospital and medical services"; that the plaintiff was accepted as a patient "for a money consideration . . . and became in-

debted and was given a bill for services rendered" by the defendant.

For the purpose of testing a question of law all facts well pleaded are of course admitted. ■ Additional facts of which judicial notice may be taken will also be considered by the court although not pleaded. (*French* v. *Senate of Calif.*, 146 Cal. 604, 608 [80 P. 1031, 2 Ann.Cas. 756, 69 L.R.A. 556] ; *Mullan* v. *State*, 114 Cal. 578, 581 [46 P. 670, 34 L.R.A. 262].) The defendant hospital district was organized under the provisions of the Local Hospital District Law (Stats. 1945, ch. 932, p. 1738; §§ 32000 et seq., Health & Saf. Code). The question presented is whether that statute has created an agency immune from liability in tort for the negligence of its agents.

It is generally recognized that when acting in its govenmental capacity a sovereign may not be sued except where the doctrine has been specifically departed from by constitutional or statutory law. (*People* v. *Superior Court,* 29 Cal.2d 754, 756 [178 P.2d 1].) The plaintiffs contend that a statutory departure from the doctrine has been brought about in this state.

In 1893 (Stats. 1893, p. 57) the Legislature enacted its first general statute providing for suits against the state. The rule is expressed today by section 16041 of the Government Code (Stats. 1945, p. 511) as follows: "Any person who has a claim against the State (1) on express contract, (2) for negligence, or (3) for the taking or damaging of private property for public use within the meaning of Section 14 of Article I of the Constitution, shall present the claim to the board in accordance with Section 16021. If the claim is rejected or disallowed by the board, the claimant may bring an action against the State on the claim and prosecute it to a final judgment, subject to the conditions prescribed by this chapter."

In *Chapman* v. *State* (1894), 104 Cal. 690 [38 P. 457, 43 Am.St.Rep. 158], recovery was sought for a loss alleged to have been due to the negligence of the Harbor Commissioners in maintaining a wharf. The facts involved occurred prior to the enactment of 1893. The court refused to apply the act retroactively to create any liability against the state for past negligence, leaving open the question of the prospective effect of tortious acts of officers of the state. The court concluded, however, that a contractual liability existed prior to the act of 1893 and allowed the plaintiff to recover

his loss in the action as an additional remedy given by the statute. The rule of the Chapman case with regard to tortious actions was followed in *Melvin* v. *State* (1898), 121 Cal. 16 [53 P. 416], again involving facts prior to the enactment of 1893. *Denning* v. *State* (1899), 123 Cal. 316 [55 P. 1000], directly presented the question of the state's prospective tortious liability under the act. Without noting the problem left open in prior cases, the court applied the language of the Chapman and Melvin cases as holding that the act of 1893 "did not create any liability or cause of action against the state where none existed before, but merely gave an additional remedy to enforce such liability as would have existed if the statute had not been enacted."

In reviewing the foregoing line of decisions, this court in *People* v. *Superior Court, supra,* 29 Cal.2d 754 [178 P.2d 1], stated: "Thus there was adopted in this state the doctrine that state consent to be sued for negligence did not waive sovereign immunity from liability for tort."

Prior to the enactment of 1893 the court was confronted with a statute authorizing the commencement of actions against the state for damages resulting from the construction of a channel in the American River by a levee commission. The court held (*Green* v. *State* (1887), 73 Cal 29 [11 P. 602, 14 P. 610]) that the statute did not waive any legal defense except that of immunity from suit. Thus, where the state was engaged in a public work for the common good, that is, in a governmental activity as distinguished from a commercial enterprise, the former constituted a defense to the action authorized by the statute.

In *Melvin* v. *State, supra,* 121 Cal. 16 [53 P. 416], in denying the retroactive application of the act of 1893, the court pointed out that the state was engaged in a governmental activity. In *Denning* v. *State, supra,* 123 Cal. 316 [55 P. 1000], in denying the prospective application of the act the court noted that the plaintiff was employed by the state in a governmental activity at the time of his injury. ▮ Following these decisions it was generally held that the doctrine of sovereign nonliability for tort applied to state subdivisions but only where they were acting in a governmental capacity in the discharge of official duties. (*People* v. *Superior Court, supra,* 29 Cal.2d 754, 760 [178 P.2d 1]; *Nissen* v. *Cordua Irr. Dist.,* 204 Cal. 542 [269 P. 171]; *Kellar* v. *City of Los Angeles,* 179 Cal. 605 [178 P. 505]; *Davoust* v. *City of Alameda,* 149 Cal. 69, 70 [84 P. 760, 9 Ann.Cas. 847, 5 L.R.A.N.S.

536]; *Madison* v. *City & County of San Francisco,* 106 Cal. App.2d 232 [234 P.2d 995, 236 P.2d 141].) On the other hand, "where the state engaged in industrial or business enterprises, as distinguished from purely governmental activities, tort liability attaches and may be adjudicated pursuant to the consent statute." (*People* v. *Superior Court, supra,* 29 Cal.2d 754 [178 P.2d 1]; see, also, *Yolo* v. *Modesto Irr. Dist.,* 216 Cal. 274 [13 P.2d 908].)

The defendant hospital district is a public corporation (Health & Saf. Code, § 32001), duly formed as the result of the favorable vote of a majority of the voters in the district (Health & Saf. Code, § 32003). Although no section of the statute specifically declares the purpose for which the district is created that purpose is made apparent from the statute as a whole. Thus, in section 32125 (powers of a local hospital district) it is declared that: "The board of directors shall be responsible for the operation of all hospitals owned or leased by the district, according to the best interests of the public health. . . . ." In section 32128 (Minimum standards of a local hospital district) it is stated that "The rules of the hospital, established by the board of directors pursuant to this article, shall include. . . . 5. Such limitations with respect to the practice of medicine and surgery in the hospital as the board of directors may find to be in the best interests of the public health and welfare. . . . ."

Section 32129 prohibits the district from rendering any professional services, either directly or through persons employed by the hospital. Professional services may be rendered by physicians and surgeons who contract to do so with the district, but only on a basis which does not result in any profit or gain to the district. Section 32125 provides that "In fixing the rates the board shall, insofar as possible establish such rates as will permit the hospital to be operated upon a self-supporting basis." Section 32200 gives the district the right to finance itself by taxation of "real and personal property within the district," and sections 32201 et seq. provide means by which an annual tax may be levied and collected to support the operations of the district during the next ensuing fiscal year.

It is the contention of the defendant district that it is exercising a governmental function under the laws of the state; that it is not acting in a proprietary capacity, and that as a result it is immune from a suit for personal injuries. It is insisted that the same rule should apply to hospitals

organized under the provisions of the Local Hospital District Law as apply to county hospitals organized and operated under section 200 et seq. of the Welfare and Institutions Code. ■ The principal difference between the two appears to be that county hospitals are administered by county boards of supervisors while hospitals operated by local hospital districts are administered by a board of directors. But both are governmental agencies. County hospitals may charge patients for hospitalization and medical care (Welf. & Inst. Code, § 203.5); are supported by taxation (Welf. & Inst. Code, § 200); and tend to promote the public health and welfare (Welf. & Inst. Code, § 203). ■ The cases have uniformly held that county hospitals are exercising governmental functions and that the counties are not liable for the negligence of employees towards patients therein. (*Sherbourne* v. *Yuba County,* 21 Cal. 113 [81 Am.Dec. 151]; *Madison* v. *City & County of San Francisco, supra,* 106 Cal.App.2d 232 [234 P.2d 995, 236 P.2d 141]; *Latham* v. *Santa Clara County Hospital,* 104 Cal.App.2d 336 [231 P.2d 513]; *Griffin* v. *County of Colusa,* 44 Cal.App.2d 915 [113 P.2d 270]; *Calkins* v. *Newton,* 36 Cal.App.2d 262 [97 P.2d 523].)

The plaintiff seeks to distinguish the present case from those dealing with county hospitals on the ground that the authority of county hospitals to charge fees is limited to those patients otherwise eligible for admission because of financial circumstances or the unavailability of other hospital facilities (*Latham* v. *Santa Clara County Hospital, supra,* 104 Cal.App.2d 336 [231 P.2d 513]); whereas there is no limitation on the admission of paying patients to hospitals operated by local hospital districts (Health & Saf. Code, § 32125). ■ However, any distinction based upon the right to charge for hospitalization or medical care is not apparent. The imposition of a charge for service is not inconsistent with the exercise of a governmental function. (*Kellar* v. *City of Los Angeles, supra,* 179 Cal. 605 [178 P. 505]; *Latham* v. *Santa Clara County Hospital, supra,* 104 Cal. App.2d 336 [231 P.2d 513]; *Calkins* v. *Newton, supra,* 36 Cal.App.2d 262, 267 [97 P.2d 523].) ■ Neither is the profit or nonprofit phase of the activity engaged in determinative of either a proprietary or a governmental function. (*People* v. *Superior Court, supra,* 29 Cal.2d 754 [178 P.2d 1]; *cf. Chafor* v. *City of Long Beach,* 174 Cal. 478 [163 P. 670, Ann.Cas. 1918D 106, L.R.A. 1917E 685].) ■ The test is whether the particular activity in which the governmental

agency is engaged at the time of the injury is of a public or a private nature. The agency may be authorized to act in both capacities. For example, it has been held that an irrigation district, so long as it operates only as an irrigation district, is acting in a governmental capacity within the meaning of the rule that such agencies are not liable for tort. (*Nissen* v. *Cordua Irrigation District, supra,* 204 Cal. 542 [269 P. 171]; *Whiteman* v. *Anderson-Cottonwood Irr. Dist.,* 60 Cal.App. 234 [212 P. 706].) But when it steps aside and engages in the business of selling power in a proprietary capacity it is liable in tort. (*Yolo* v. *Modesto Irr. Dist., supra,* 216 Cal. 274 [13 P.2d 908]; see, also, *Davoust* v. *City of Alameda, supra,* 149 Cal. 69 [84 P. 760, 9 Ann.Cas. 847, 5 L.R.A.N.S. 536].)

In the present case the statute does not authorize the hospital district to engage in private business. The primary purpose of the statute is to fulfill the function of protecting the public health and welfare by furnishing hospital services in areas where hospital facilities are for some reason inadequate, especially in those rural districts where hospitals cannot be maintained without extraordinary governmental support. While the health and general welfare of the citizens of a county may be promoted by the availability of a county hospital regardless of the ability to pay (*Calkins* v. *Newton, supra,* 36 Cal.App.2d 262, 266 [97 P.2d 523]), it is equally true that the health and general welfare of the citizens of a district are promoted by the availability of such a hospital within the district. In the exercise of its police power the state may act to provide for the public health and welfare and this in essence is what the Local Hospital District Law was designed to accomplish.

The plaintiff relies upon *Silva* v. *Providence Hospital of Oakland,* 14 Cal.2d 762 [97 P.2d 798]. The court held that the private charitable hospital there involved was not immune from liability in tort for negligent acts of its agents. That case has no application where as here the immunity arises out of the governmental nature of the activity engaged in by a public agency.

It is contended that the present action is specifically authorized by section 32121 of the Health and Safety Code, which provides that "Each hospital district shall have and exercise the following powers . . . (b) To sue and be sued in all courts and places and in all actions and proceedings whatever. . . ." This provision of the statute means no more

than that the district is authorized to appear as a party to an action where it otherwise would be entitled to prosecute such an action or otherwise be liable to answer in damages. In *Nissen* v. *Cordua Irr. Dist., supra,* 204 Cal. 542 [269 P. 171], it was held that a provision in the California Irrigation District Act authorizing the board of an irrigation district "to sue, appear and defend" in all courts, actions, suits, or proceedings did not enlarge the liability of the district and applied only to actions such as a public corporation might otherwise be subjected to.

 Whether the doctrine of sovereign immunity should be modified in this state is a legislative question. New York's consent statute prior to 1939 was construed by its courts not to create a cause of action in favor of a claimant which did not theretofore exist, although the state's immunity to suit was waived. (*Smith* v. *State of New York,* 227 N.Y. 405 [125 N.E. 841, 13 A.L.R. 1264].) The rule applied in New York was similar to that announced by this court in its early beginnings and since consistently adhered to. To impose a liability upon the state for the tortious acts of its agents committed in the performance of a governmental function, the New York Legislature adopted its Court of Claims Act in 1939 by which the state waived both its immunity from suit and its defense of performing of governmental function. The act expressly provides that the state's liability be determined in accordance with the same rules of law as are applied in actions against individuals or private corporations. No such legislative change in the law of this state has been made.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

Again it is necessary for me to protest the continuance of the archaic, outmoded, unfair and discriminatory doctrine of governmental immunity blindly followed by the majority in this case. As I have heretofore pointed out, and as I will continue to point out, the reason which ever existed for the rule has long since ceased to exist, and when the reason ceases, so should the rule (Civ. Code, § 3510).

Section 32121 of the Health and Safety Code specifically provides that "Each hospital district shall have and exercise the following powers: . . . ; (b) To sue and be sued in all

courts and places and in *all* actions and proceedings *whatever. . . .* '' (Emphasis added.) A majority of this court holds that ''This provision of the statute means no more than that the district is authorized to appear as a party to an action where it otherwise would be entitled to prosecute such an action or otherwise be liable to answer in damages.'' This statement *may* have a meaning known only to the majority, but it is held to have *no* meaning *here* where the facts show that plaintiff, a paying patient, in a hospital run by a local hospital district, was badly burned while unconscious, as the result of the gross negligence of the employees of the hospital. Such a holding is a travesty on justice and should lead every ill person to travel as many miles as his, or her, condition permits to find haven in a hospital which will be liable for its tortious conduct. To say that the state was engaged in a public work for the common good—that is, in a governmental activity as distinguished from a commercial enterprise—is begging the question. Under that definition, a minister would not be liable for tortious conduct; a doctor could never be sued for malpractice; a private hospital located conveniently near any ill patient would never be liable for injury flowing from its negligence; a dentist would not be liable for tortious conduct toward his patients. All of these tend to promote the public welfare and the public health. The fact that all of them engage in their various professions for personal monetary gain, no matter how slight, is not of the least importance under the rule stated in the majority opinion where we are told that ''Neither is the profit or nonprofit phase of the activity engaged in determinative of either a proprietary or a governmental function'' and that ''The imposition of a charge for service is not inconsistent with the exercise of a governmental function.'' We are told that the test ''is whether the particular activity in which the governmental agency is engaged at the time of the injury is of a public or a private nature.''

Such a hospital as the one here concerned is in direct competition with private enterprises of the same character. No thinking person could seriously contend, as I have just done, that a private hospital, a doctor, a dentist, or even a minister, should not be liable for its, or his, or her, torts, and yet the majority is so anxious to absolve any governmental agency from liability for its torts, that that is the logical outcome of this perpetuation of an outmoded and archaic theory. This is obvious because the only peg on which the entire

opinion rests is that in organizing such a hospital the state has promoted the health and general welfare of citizens in the particular community. When a patient enters such a hospital as a private patient, under the care of his, or her, own doctor, he or she should not be classified with an indigent person receiving care and aid from the welfare fund of the state if this absurd rule of governmental immunity is to go on *ad nauseum*.

The government obviously cannot insure the citizen against all defects and errors in administration, but there is no reason why the most flagrant of the injuries wrongfully sustained by the citizen, those arising from the torts of governmental officers and employees, should be allowed to rest at the door of the unfortunate citizen alone. The entire doctrine of governmental immunity rests upon a rotten foundation, and professors, writers and liberal-minded judges are of the view that it should be placed in the judicial garbage can where it belongs. (See *Barker* v. *City of Santa Fe*, 47 N.M. 85 [136 P.2d 480]; 75 A.L.R. 1196; Brooklyn Law Review, April, 1932, *"Should the Liability of Municipalities in Tort be Extended to Include Injury and Damage Caused in the Negligent Performance of a Governmental Function?"*; 120 A.L.R. 1376; 54 Harv.L. Rev., pp. 437-462, *"Municipal Tort Liability in Operation."*)

The majority opinion, in order to achieve its unjust result, finds it necessary to go back to 1893, and to cite cases decided in that era. For example, *Chapman* v. *State*, 104 Cal. 690 [38 P. 457, 43 Am.St.Rep. 158], was decided in 1894; *Melvin* v. *State*, 121 Cal. 16 [53 P. 416], was decided in 1898; *Denning* v. *State*, 123 Cal. 316 [55 P. 1000], was decided in 1899; *Green* v. *State*, 73 Cal. 29 [11 P. 602, 14 P. 610], was decided in 1887; *Sherbourne* v. *Yuba County*, 21 Cal. 113 [81 Am.Dec. 151], was decided in 1862. Apparently it is easier and more convenient to adhere to the views held by our early predecessors on this court than it is to discard them, old, outmoded and outworn as they are, for a doctrine or theory in keeping with modern times. So far as a majority of this court is concerned, we are living even farther back than the horse and buggy days.

I had thought when *People* v. *Superior Court*, 29 Cal.2d 754 [178 P.2d 1], was decided in 1947, that we had begun to revamp our ideas. It was said there that "The considerations of an asserted subversion of public interests by embarrassments, difficulties and losses, which developed the doctrine of nonliability of the sovereign in former times, are no longer persuasive in relation to an industrial or business enterprise

which by itself may be looked to for the discharge of all appropriate demands and expenses growing out of operation." I find, however, that this court has again reverted to the old, archaic theory of sovereign immunity and will continue to hold that a governmental agency, no matter how it conducts its business, is engaged in its governmental capacity and is, therefore, immune from tort liability. I dissented from the denial of a hearing in *Madison* v. *City & County of San Francisco*, 106 Cal.App.2d 232 [234 P.2d 995, 236 P.2d 141], a case involving governmental immunity, and I will do so every time a majority of this court votes to perpetuate the archaic and outmoded doctrine.

We are told in the majority opinon, that whether the doctrine should be modified in this state is a legislative question. Under the section of the Health and Safety Code heretofore quoted, it is no longer a legislative question. The Legislature has already spoken. It has provided that such a district may *"sue and be sued in all courts and places and in all actions and proceedings whatever."* It is difficult to imagine language which could set forth with more clarity the position already taken by the Legislature, and if the majority of this court was not so fettered and weighted down by the outmoded traditional concept of sovereign immunity it would so hold in this case.

I would reverse the judgment with directions to the trial court to overrule the demurrer and permit the defendant to answer if it be so advised.