[No. 1390.]

THE STATE OF NEVADA ex rel. TRENMOR COFFIN, Relator, v. R. L. HORTON, STATE CONTROLLER, Respondent.

COLLECTION OF PUBLIC REVENUES—BOARD OF EXAMINERS—STATE CONTROLLER.—The state board of examiners has no authority to employ counsel to assist the attorney general in the prosecution or the defense of actions for the collection of public revenues. The state controller alone has authority to institute and prosecute such actions and to direct and superintend the collection of all moneys due to the state.

SPECIFIC APPROPRIATIONS—CLAIMS AGAINST THE STATE.—A claim against the state for services rendered, not authorized by law and allowed by the state board of examiners, cannot be paid out of the contingent expense fund, which is an appropriation for particular purposes designated in the act making the appropriation, and the payment of such claim is forbidden by sec. 1811, Gen. Stats. of Nevada.

ORIGINAL application for a writ of mandate.

The facts sufficiently appear in the opinion.

*Trenmor Coffin*, in pro. per. for Relator.

(No brief on file.　Case argued orally.)

*J. D. Torreyson*, Attorney General, for Respondent.

(No brief on file.　Case argued orally.)

By the Court, MURPHY, C. J.:

This was an original application to this court for a peremptory

writ of mandamus. The petitioner, Trenmor Coffin, seeks to compel R. L. Horton, the state controller, to draw his warrant on the state treasurer in favor of relator for the sum of two hundred and fifty dollars, alleged to be due and owing from the state of Nevada to relator. By the affidavit upon which this application is based, it appears " that on the 16th day of January, 1893, there was pending in and on the calendar of this supreme court a cause on appeal from the district court of Lincoln county, Nevada, entitled ' *Sawyer* v. *Dooley;*' that said action was brought and prosecuted for the purpose of having the law creating the state board of equalization declared unconstitutional, and the assessment made by order of said board declared to be illegal and void; that the relator was employed by the state of Nevada to assist the attorney general in the argument and presentation of the said cause in the supreme court; that it was agreed that the relator should receive the sum of two hundred and fifty dollars for his labor and services; that on the 5th day of May, 1893, the board of examiners allowed said claim; that the said claim, together with the indorsement of the board of examiners allowing the same, was presented to the controller in the month of May, 1893, and said controller requested to draw his warrant on the treasurer in favor of the relator for the sum of two hundred and fifty dollars, but said controller refused, and still refuses, to draw said warrant; that there is, in the treasury of the state unexpended appropriation of public money sufficient in amount to pay said claim." It is admitted by the attorney general that the relator did assist in arguing and presenting the case of *Sawyer* v. *Dooley* before the supreme court, and that the services rendered by the relator were reasonably worth the sum claimed. The respondent, in answering the affidavit, " denies that the relator was employed by the state of Nevada, by any one who had authority so to act or bind said state in actions of this character; denies that it was agreed that the relator should have the sum of two hundred and fifty dollars for his said services, or any sum of money; denies that there is any money in the state treasury applicable to the payment of the claim of relator." From the testimony introduced on the hearing of the application it could be inferred that the relator was led to believe, from conversations had between the board of examiners and himself, that his services would be acceptable,

and with that impression on his mind he did assist the attorney
general in presenting the case before this court; yet we know
of no law authorizing the board of examiners to employ counsel
to assist the attorney general in the prosecution or defense in
actions for the collection of the public revenue.

Section 1779, Gen. Stats., makes it the duty of the attorney
general to attend each of the terms of the supreme court, and
there prosecute or defend, as the case may be, on the part of
the state, all causes to which the state may be a party.

Section 1813 makes it the duty of the state controller to insti-
tute and prosecute, in the name of the state, all proper suits for
the recovery of any debts, moneys or property of the state, or
for the ascertainment of any right or liability concerning the
same.    He shall direct and superintend the collection of all
moneys due to the state.    And in order that the controller may
be in a position to carry out the provisions of the above act, the
legislature has, at each and every session since the organization
of our state government made appropriations, and placed the
same under the immediate control of that officer.    The appro-
priation for 1891 reads as follows:    " For enforcing the collec-
tion of revenue and prosecuting delinquents by the state con-
troller, one thousand dollars."    The act of 1893 reads:    " The
sum of five hundred dollars is hereby appropriated out of any
moneys in the general fund, not otherwise appropriated, for
enforcing the collection of revenue of this state and prosecut-
ing delinquents.    Said sum of five hundred dollars shall, at all
times, be under the direction and control of the state controller
of this state for the purpose of carrying out the provisions of
this act."    No money can be drawn from that appropriation
without the services rendered have been performed at the
request of the controller.

The relator, contends that, notwithstanding he was not em-
ployed nor requested by the controller to assist the attorney
general, yet having done so, and the board of examiners hav-
ing approved of said act and allowed his claim, it was the duty
of the controller to have drawn his warrant, and made it pay-
able out of the contingent expense fund.    We cannot agree with
the relator.    That appropriation is made for particular pur-
poses designed by the act making the appropriation, and it would
be in clear violation of the second subdivision of section 1811,
Gen. Stat., which reads:    " And no claim for services rendered

or advances made to the state or any officer thereof, shall be audited or allowed unless such services or advancement shall have been specially authorized by law, and an appropriation made for its payment." The services rendered in this case were not authorized by law, because the employment was not authorized nor made by the party having authority to bind the state, and there is no appropriation from which the amount claimed to be due can be paid.

The board of examiners have unlimited power to investigate the merits of all claims presented for allowance and may act upon facts within the knowledge of its members, as well as upon evidence obtained from other sources (Gen. Stat. Sec. 1898); and its duty in relation to claims for services rendered to or on behalf of the state, where the same has not been authorized by law, and no appropriation has been made upon which the controller can draw his warrant, similar to the one under consideration, is pointed out by section 1895, Gen. Stat. of this state. Application for the peremptory writ must be denied and it is so ordered.