[S. F. No. 442. Department One.—October 24, 1896.]

## JOHN MULLAN, APPELLANT, v. THE STATE OF CALIFORNIA, RESPONDENT.

EMPLOYMENT BY STATE—AUTHORITY OF LAW—JUDICIAL NOTICE—CONSTRUCTION OF COMPLAINT.—The court will take judicial notice that there can be no employment by the state without authorization by the law-making power; and as it is further chargeable with knowledge of all the public and private acts of the legislative, executive, and judicial departments of the state, a complaint alleging employment by the state must be regarded as presenting to the court whatever of authority there may exist in the law for his employment to the same extent as if such authority were expressly alleged.

ID.—APPOINTMENT AND RECOMMENDATION OF GOVERNOR—CONCURRENT RESOLUTION OF LEGISLATURE—CONSTITUTIONAL LAW—PASSAGE OF BILL. The appointment by the governor of an agent to represent the state at Washington respecting the reimbursement of the state for expenditure made by it in the suppression of Indian hostilities, and the recommendation by the governor that the legislature should confirm the appointment, and provide for the compensation of the appointee, and a concurrent resolution of the legislature confirming the appointment, and directing the governor to fix the compensation at twenty per cent of the amounts collected, do not constitute an employment of such agent by the state; and such proceedings do not constitute authority of law within the meaning of sections 15 and 32 of article IV of the constitution, which can only be by bill regularly passed and approved by the governor.

ID.—DEALING WITH PUBLIC OFFICERS—STATE NOT ESTOPPED.—One who deals with public officers is charged with the knowledge of, and is bound at his peril to ascertain the extent of, their powers to bind the state for which they seem to act, and if they exceed their authority, the

state is not bound thereby to any extent; nor can it be estopped from denying the validity of a contract made by such officers without authority with a private person on the ground that it has received the benefit, and that the contract has been fully performed on the part of such person.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. CHARLES W. SLACK, Judge.

The facts are stated in the opinion of the court.

*Reddy, Campbell & Metson,* for Appellant.

The court erred in sustaining the demurrer to the complaint, because the point that the contract of plaintiff with the state was void cannot be raised on demurrer. The allegation of fact that plaintiff was employed by the state and was its agent is admitted by the demurrer, and if plaintiff's appointment was not in fact made, or made by one who had no authority to make it, that is matter of evidence which cannot be taken advantage of by demurrer to the complaint. (*Cook* v. *Pablo de la Guerra,* 24 Cal. 237; *Wise* v. *Williams,* 72 Cal. 544; *Harmon* v. *Page,* 62 Cal. 448; *Cameron* v. *San Francisco,* 68 Cal. 391.) The plaintiff was appointed by the governor, and he had authority to make the contract. (Pol. Code, sec. 380, subd. 5.) But independent of this section of the code, plaintiff's appointment is valid, and the contract is binding on the state. (Const., art. IV, sec. 32; *Miller* v. *Dunn,* 72 Cal. 462; 1 Am. St. Rep. 67; *Lycoming Fire Ins. Co.* v. *Wright,* 60 Vt. 515; *State Bank* v. *Knoop,* 16 How. 375.) The case of *Brooks* v. *Fischer,* 79 Cal. 173, effectually disposes of the contention that the legislature can create no law except by a formal bill passed and approved by the executive. The state is now estopped from denying the validity of the contract made with plaintiff. (*Davis* v. *Gray,* 16 Wall. 203; *Hall* v. *Wisconsin,* 103 U. S. 5; *State* v. *Milk,* 11 Fed. Rep. 389; *State Bank* v. *Knoop, supra.*)

*W. F. Fitzgerald, Attorney General,* and *W. H. Anderson, Assistant Attorney General,* for Respondent.

The employment in question was made without express authority of law, and was and is null and void. (Const., art. IV, sec. 32.)   The governor had no authority to make the appointment.   *(People* v. *Talmage,* 6 Cal. 256; *San Francisco etc. Co.* v. *Banbury,* 106 Cal. 130.) The attempted ratification by joint resolution of the legislature did not render the employment valid.   No law could be passed except by bill.   (Const., art. IV, secs. 15, 16, 32; *People* v. *Toal,* 85 Cal. 333; *Collier etc. Co.* v. *Henderson,* 18 Colo. 259; *Henderson* v. *Collier etc. Lithographing Co.,* 2 Colo. App. 251.)   The duties of the state's agents must be defined by statute, and the agent must show his authority to act as such.   *(San Francisco etc. Co.* v. *Banbury,* 106 Cal. 129.)   Therefore, the allegations of the complaint, that appellant rendered services "as the agent of the state of California," is a mere conclusion of law.   The demurrer does not admit the truth of such an allegation; and the court can take judicial knowledge of the fact that the appellant acted without authority of law.   *(Branham* v. *Mayor,* 24 Cal. 585; Code Civ. Proc., sec. 1875, subds. 2, 3; *People* v. *Hagar,* 52 Cal. 188; *Whiting* v. *Townsend,* 57 Cal. 515; *Faekler* v. *Wright,* 86 Cal. 210; *Cole* v. *Segraves,* 88 Cal. 105; *De Baker* v. *Southern Cal. Ry. Co.,* 106 Cal. 257; 46 Am. St. Rep. 237.) A transaction, imbued with the fatal infirmity of being in violation of law, cannot be purged of the infirmity by means of an estoppel.   *(Martin* v. *Zellerbach,* 38 Cal. 300; 99 Am. Dec. 365.)

VAN FLEET, J.—Appeal from the judgment entered upon failure to amend after demurrer sustained to the complaint.

The complaint is in two counts.   The first count alleges the following facts: That between the twelfth day of December, 1878, and the first day of May, 1891, the plaintiff rendered services to the defendant, at its special instance and request, as the agent of said state, in act-

ing in its behalf in the matter of recovering certain
moneys paid by the state to the United States under the
provisions of a certain act of Congress, approved August
5, 1861, entitled, "An act to provide increased revenue
from imports to pay interest upon the public debt, and
for other purposes"; that the defendant promised to pay
plaintiff therefor twenty per cent of all such moneys col-
lected by him from the United States; that thereafter
plaintiff collected from the United States, as such agent,
and caused to be paid to said state, the sum of two
hundred and sixteen thousand and three hundred and
fifty-seven dollars and eighty-seven cents; that no part
of said twenty per cent of said sum has been paid to
plaintiff; and that said plaintiff has presented his claim
for the sum due him to the state board of examiners, as
provided by law, and said board has refused to allow
said claim, either in whole or in part.   The second
count is upon a similar cause of action for a smaller .
amount.

The demurrer was sustained upon the ground that
the alleged employment of plaintiff was unauthorized
and void, and created no valid obligation against the
state.   It is suggested by appellant, *in limine*, that this
objection does not arise on demurrer; that the allega-
tion that plaintiff was employed by the state as its agent
is one of fact, and is admitted by the demurrer; that, if
such employment was not legal because made in a man-
ner not binding upon the state, that question can only
be raised by answer and disclosed by evidence, but does
not appear upon the face of the complaint.

But the court will take cognizance of the fact that
there could be no valid employment of plaintiff by the
state for the purpose alleged without authorization by
the law-making power, and, as we are further charged
with knowledge of whatever is established by law, and of
all public as well as private acts of the legislative, ex-
ecutive, and judicial departments of the state (Code Civ.
Proc., sec. 1875, subds. 2, 3), the complaint must be re-
garded as laying before us whatever of authority there

may exist in the law for plaintiff's employment, to the same extent as if such authority were expressly alleged. (*Whiting* v. *Townsend*, 57 Cal. 515; *Faekler* v. *Wright*, 86 Cal. 210; *Cole* v. *Segraves*, 88 Cal. 105.)

Proceeding, then, to inquire as to the authority under which plaintiff assumed to act in the premises, we find that the only thing relied upon as tending to establish any special legislative authorization for the alleged employment is based upon these facts:

In his biennial message to the legislature at its twenty-fifth session the governor made a statement that he had received information with reference to proceedings before Congress looking to the reimbursement of this state for certain expenditures made by it in suppressing Indian hostilities during the Modoc war, and in repelling prior Indian invasions and hostilities, and also of certain sums assessed against this state under the act of Congress, approved August 5, 1861, to pay the interest on the public debt, and for other purposes, and wherein it is stated that he had appointed Captain John Mullan to represent this state in said matters before the authorities at Washington, and recommends to the legislature "that these appointments be ratified and confirmed by you, and that you provide for his compensation to be paid out of the sums he may recover for the state, contingent, however, upon his success, it having been expressly understood that such compensation should be left entirely to your judgment and discretion." (Vol. 1, Appendix to Journal of Senate and Assembly, 25th Session, pp. 22, 23.)

Acting upon this recommendation of the governor, the legislature on March 3, 1883, adopted the following resolution:

"Assembly Concurrent Resolution No. 20, relative to directing the governor to fix the compensation for services rendered by Captain John Mullan in collections of claims due the state from the United States.

"*Whereas,* the governor and state surveyor general of

this state have heretofore appointed Captain John Mullan, of San Francisco, California, agent and attorney to represent the interests of the state of California before the proper authorities of the United States at Washington, D. C., in the matter of the claim of this state to the five per cent net proceeds of the sales of the public lands by the United States in this state; and also in the matter of the direct tax levied upon this state by the United States, under the act of Congress of August sixth, eighteen hundred and sixty-one; and, also, of her claim arising during the Modoc war in eighteen hundred and seventy-two; and, also, under the provisions of the act of Congress of June twenty-seventh, eighteen hundred and eighty-two; therefore, be it

"Resolved by the assembly of California, the senate concurring, that the appointments so conferred upon Captain John Mullan by the governor and surveyor general, respectively, are hereby ratified and confirmed, and the governor of the state be, and he is hereby, authorized and directed to fix the compensation for the services by Captain John Mullan heretofore and that may be by him hereafter rendered, at twenty per cent of each of the sums or claims that may be by him collected from the United States, and to pay to him such per cent out of the moneys that may be collected by him and paid to this state on account of each of the foregoing matters respectively; provided, however, that this state shall not in any event become liable for any expenses, fees, and salaries of any nature whatever other than such contingent commission."

The resolution further provides for the turning over to Captain Mullan of all papers and vouchers with reference to the claims involved, and the taking of his receipt therefor. The references in the resolution to the appointment of Mullan by the surveyor general to represent the state in its claim to the five per cent proceeds on sales of land is not here involved.

It is contended by the attorney general, and we think correctly, that these proceedings did not constitute any

competent basis for the contract alleged within the provisions of the constitution of this state. Section 32 of article IV of our constitution, so far as pertinent to the question involved, provides:

"The legislature shall have no power . . . . to pay or to authorize the payment of any claim hereafter created against the state . . . . under any agreement or contract *made without express authority of law; .and all such unauthorized agreements or contracts shall be null and void.*"

And section 15 of the same article provides that: "*No law shall be passed except by bill.*"

That the action of the governor and legislature did not constitute the enactment of a "law" within the purview of the constitution is quite obvious. It is in fact not contended that the resolution is to be regarded as a "bill" within the meaning of the constitution, but it is urged that the words "express authority of law" as there used have a broader signification than that of a valid statute law enacted with all the formalities requisite in the case of a bill; and that it was competent for the legislature to ratify the act of the governor in assuming to appoint the plaintiff by a resolution such as the one here quoted, and that such action constitutes "express authority of law." But we are unable to coincide in this view. The language of the constitution is in itself a complete answer to the proposition. It provides in express terms that there shall be but one mode of enacting a "law" thereunder, and that mode is the exclusive measure of the power of the legislature in that regard. A mere resolution, therefore, is not a competent method of expressing the legislative will, where that expression is to have the force of law, and bind others than the members of the house or houses adopting it. The fact that it may have been intended to subserve such purpose can make no difference. The requirements of the constitution are not met by that method of legislation. "Nothing becomes law simply and solely because men, who possess the legislative power, will that it shall be, unless they express their determination to

that effect in the mode appointed by the instrument which invests them with power, and under all the forms which that instrument has rendered essential." (Cooley's Constitutional Limitations, c. 6, p. 155.)

It is true, as contended, that legislation for certain limited puposes by means of resolutions or legislative orders is in use to some extent in certain of the states and in Congress. But it will be found that in most if not all instances it is under a constitution which either expressly recognizes it, as does the constitution of the United States, or one which at least does not forbid it. And it will be usually found to take the form of a resolution, requiring the assent of the executive to give it effect. In Congress this form of legislation, which is there termed a "joint resolution," is regarded as a bill, and treated with the same formalities. Even if this mode of legislation were competent under our constitution, the resolution relied upon would not arise to the dignity of law, since it lacks the essential of executive approval. In *Collier etc. Lithographing Co.* v. *Henderson,* 18 Col. 259, under a constitution containing restrictions similar to those found in that of California, it was held that a resolution adopted by both houses of the legislature for a purpose not dissimilar in principle from that intended to be subserved by the one under consideration, was not "a law of the state," as it "was not passed by bill." (And see *People* v. *Toal,* 85 Cal. 333.)

The case of *Miller* v. *Dunn,* 72 Cal. 462, 1 Am. St. Rep. 67, is cited by appellant as authority for the proposition that the language " express authority of law " is not confined in its meaning to a statute law enacted in the manner prescribed in the constitution. But in that case the statute, under which the contract was made and the service performed, had in fact been passed with all the formalities requisite under the constitution to a valid law, and it was held that such an act, although unconstitutional, was nevertheless a " law " in the sense that it would support an appropriation to pay for the

work done under color of its apparent grant of authority, and before its invalidity had been declared by the courts. In the present case the legislature did not pretend to follow the formal requirements of the constitution in its attempt to grant authority for the contract, and its action lent no color of regularity to plaintiff's employment. Moreover, we are not disposed to extend the doctrine announced in *Miller* v. *Dunn, supra.*

The case of *Brooks* v. *Fischer*, 79 Cal. 173, merely holds that, under section 8 of article XI of the constitution, a city charter, adopted by the freeholders of a municipality, may be approved by a concurrent resolution of the two houses of the legislature, without the consent of the executive, because that provision only requires the assent of the " legislature," and does not contemplate the passing of an act for the purposes of such approval; it being expressly held "that the *legislature* is one thing and the *law-making power* of the state another." It is not authority for the proposition that the legislature can enact " laws " in any other mode than by bill.

There is no merit in the claim that the employment of plaintiff was authorized by section 380, subdivision 3, of the Political Code, which, in defining the powers of the governor, provides that, "Whenever any suit or legal proceeding is pending against this state, or which may affect the title of this state to property, or which may result in any claim against the state, he may direct the attorney general to appear on behalf of the state, and may employ such additional counsel as he may judge expedient." That provision has no application to the facts here alleged. The action of the governor was not attempted to be taken under that section, nor is the action brought upon any such theory. The complaint does not aver that plaintiff was employed as counsel, or even that he was an attorney at law, and so eligible for the character of employment there provided for. He was employed as a mere agent. While an

attorney might be employed as agent, one not an attorney could not be employed for the service contemplated in that section.

Nor is there anything in the point that the state is now estopped from denying the validity of the contract with plaintiff, since he has in good faith performed the service and the state has received the benefit thereof. The doctrine of estoppel has no application to this case. It is not like a transaction between private individuals. As suggested in *Miller* v. *Dunn, supra*, " There is no moral obligation on the part of the state which can be enforced upon equitable principles, nor does the good faith of the party dealing with the state cut any figure in the case, if in fact the work was done 'without express authority of law'; for this provision was placed in the constitution to cut off all claims based upon mere good faith and equity."

And, says Mr. Bishop: " The government is never estopped, as an individual or private corporation may be, on the ground that the agent is acting under an apparent authority which is not real; the conclusive presumption that his powers are known rendering such a consequence impossible. So that the government is bound only when there is an actual authorization." (Bishop on Contracts, sec. 993.)

One dealing with public officers is charged with the knowledge of, and is bound at his peril to ascertain, the extent of their powers to bind the state for which they seem to act. And, if they exceed their authority, the state is not bound thereby to any extent. (Throop on Public Officers, sec. 551. See, also, *State* v. *Horton*, 21 Nev. 466.)

We think the demurrer was properly sustained, and the judgment is affirmed.

HARRISON, J., and GAROUTTE, J., concurred.